UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
HIKEEN GREEN,

      Plaintiff,

   - against -

DR. DORA B. SCHRIRO, Commissioner of
NYC Department of Corrections, ERIK
BERLINER, Associate Commissioner of
Health Affairs for NYC Department of
Corrections, LUIS A. RIVERA, Warden of
Anna M. Kross Center, VIOLETA SANTA-
CRUZ, HASAN AZMAT, MD, Doctor for
Anna M. Kross Center, RAINO HILLS,
Warden of Robert N. Davoren Center,
MOHAMMED HABIB, MD, Doctor for
Robert N. Davoren Center, in their individual
and official capacities,

      Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-01641 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Hikeen Green ("Plaintiff"), appearing *pro se* and proceeding *in forma pauperis*, brings this action against Defendants Dr. Dora B. Schriro, Commissioner of the NYC Department of Corrections; Erik Berliner, Associate Commissioner of Health Affairs for the NYC Department of Corrections; Hasan Azmat, MD, Doctor for the Anna M. Kross Center; Raino Hills, Warden of the Robert N. Davoren Center; Mohammed Habib, MD, Doctor for the Robert N. Davoren Center (collectively, "City Defendants"); and Violeta Santa-Cruz,[1] alleging violations of the Eighth Amendment and New York state law in connection with his medical treatment in prison. Before

---

[1] Plaintiff also brings this action against Luis A. Rivera, Warden of the Anna M. Kross Center. Defendant Rivera has yet to appear or defend against this action. A certificate of default was therefore issued against him on August 24, 2018 (Dkt. 45) and Plaintiff has filed a Motion for Default Judgment (Dkt. 69).

the Court are two separate motions to dismiss filed by the City Defendants and Defendant Santa-Cruz. For the reasons stated below, the City Defendants' motion is denied and Defendant Santa-Cruz's motion is granted.

## BACKGROUND

I.     **Relevant Facts**[2]

Plaintiff alleges that while in the custody of the New York City Department of Corrections ("NYC DOC"), he was inadequately treated for syphilis. According to Plaintiff, after he was arrested and detained in early December 2012, NYC DOC medical personnel administered a physical exam that included blood work and lab tests. (Amended Complaint ("Am. Compl."), Dkt. 67-1, ¶¶ 6–8.) On December 5, 2012, results from the lab tests confirmed that Plaintiff tested positive for syphilis. (*Id.* ¶ 9.) Plaintiff alleges that medical staff, including Defendant Santa-Cruz and Defendant Azmat, told him that he would get the necessary treatment for the disease. (*Id.*) Plaintiff believes the treatment he received included either a shot or medicine in a powder form. (Transcript of June 1, 2018 pre-motion conference ("June 1 Transcript"), Dkt. 58, at 5:15–18.)

In June 2013, Plaintiff was in the process of being transferred to the state correctional system. (Am. Compl. ¶ 10.) As part of this transfer process, Defendant Santa-Cruz[3] completed a review of Plaintiff's medical records and prepared paperwork, including a form entitled "Inter-

---

[2] In deciding a motion to dismiss under Rule 12(b)(6), the Court must assume as true the allegations in the complaint. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306–07 (2d Cir. 2015). The facts in this section are taken from Plaintiff's Amended Complaint (Dkt. 67-1), as well as his statements made during the June 1, 2018 pre-motion conference and the March 21, 2019 oral argument, which the Court construes as supplementing his written complaint.

[3] Though Defendant Santa-Cruz works at a NYC DOC prison, she is employed by the state prison system to help prepare inmates for transfer from the city prison system to the state prison system. (Am. Compl. ¶ 12.)

2

System Transfer/Pre-Screening Form – Medical Information"[4] ("Transfer Form"), to ensure that Plaintiff's medical treatment continued uninterrupted upon his transfer. (Am. Compl. ¶¶ 10, 12; Transfer Form, Dkt. 48-2.) The Transfer Form, dated June 14, 2013, notes that Plaintiff was diagnosed with syphilis on December 5, 2012. (Transfer Form, Dkt. 48-2, at ECF[5] 2; Defendant Santa-Cruz Reply Brief ("Reply Br."), Dkt. 66, at 1–2.) Plaintiff alleges that Defendant Santa-Cruz failed to ensure that Plaintiff's medical records were complete and accurate and "failed to notify the necessary parties[] [that] the records [were] missing documentation of any treatment for the diagnosed [syphilis] condition." (Am. Compl. ¶ 12.)

Plaintiff also alleges that at the same time he was in the process of being transferred, two further blood tests confirmed that on June 14, 2013 and June 20, 2013 Plaintiff still had active syphilis that needed treatment. (Am. Compl. ¶ 11.) Plaintiff alleges that no one at NYC DOC ever told him about these positive tests. (*See* Am. Compl. ¶ 13; June 1 Transcript at 8:12–14 ("During [June 2013], I was called down to the medical department[,] but they never told me that I still . . . needed treatment.").) In fact, Plaintiff alleges that after receiving his initial diagnosis in December 2012, he was never given any other information about his syphilis infection while incarcerated at NYC DOC. (*See* June 1 Transcript at 7:25–8:16.)

---

[4] In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [Plaintiff's] possession or of which [Plaintiff] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Though Plaintiff does not include or reference the Transfer Form in his Amended Complaint, he provided a copy of it to help Defendants identify who Defendant Santa-Cruz was, so that she could be properly served. (*See* Plaintiff's 9/19/2018 Letter to Judge Chen, Dkt. 48.) Plaintiff was therefore aware of the Transfer Form before filing his Amended Complaint and the Court will take judicial notice of it.

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

On July 1, 2013, Plaintiff was transferred to the state prison system. (Am. Compl. ¶ 13.) Upon being transferred, Plaintiff alleges that his health care providers "were unsure about whether or not . . . the proper treatment [was] administered for the diagnosed condition, and if it was ever completed, because of the incomplete and unclear medical records which were initially provided by NYC[]DOC." (Am. Compl. ¶ 14.)[6] It wasn't until June 2017, when a non-party doctor, "Dr. K. Mantaro," told Plaintiff that there was "no indication or record" that Plaintiff was ever properly treated for syphilis. (*Id.* ¶ 15.) She referred Plaintiff to a specialist, who suggested that Plaintiff undergo a lumbar puncture procedure to determine if the syphilis infection was still active. (*Id.*) The lumbar puncture confirmed that Plaintiff's infection had progressed to neurosyphilis. (*Id.* ¶ 17.) The non-party doctors informed Plaintiff that "the accepted and standard treatment" for a syphilis diagnosis was "3 consecutive shots of penicillin or [p]enicillin administered intravenously." (Am. Compl. ¶ 18 (internal quotations omitted).) To address his neurosyphilis, Plaintiff was treated with a ten-day intravenous course of penicillin from September 21, 2017 to October 2, 2017. (*Id.* ¶¶ 19–20.)

## II. Procedural History

Plaintiff filed his original complaint on March 14, 2018. (Dkt. 1.) In the original complaint, Plaintiff provided addresses for all Defendants. (*Id.* at ECF 1–2.) Though summonses were returned executed as to all Defendants (Dkts. 7–13), City Defendants argued that service was improper. (Dkt. 15 at ECF 1–2 (requesting that Defendants Hasan and Habib be served at their work addresses and asking for more time to find the proper addresses for Defendants Schriro,

---

[6] Plaintiff has a separate action pending in the Northern District of New York alleging similar allegations against the state prison personnel and doctors. (*See Hikeen Green v. Cheref Makram, Robert Kasulke, David Haimes, Jane Doe Nurse, Amber Lashway, et al*, No. 9:18-cv-0703 (BKS) (ATB), Dkt. 70-2.)

4

Berliner, Rivera, and Hills).) The Honorable Lois Bloom, the magistrate judge assigned to this matter, noted that City Defendants could contest service when they answered the Complaint, but denied City Defendants' request for more time to find proper addresses and/or order the U.S. Marshals Service to re-serve some Defendants. (Apr. 19, 2018 Order, Dkt. 17.)[7] City Defendants filed a Motion to Dismiss on October 16, 2018. (Dkt. 53.) On January 3, 2019, Defendant Santa-Cruz[8] filed a pre-motion conference request that the Court construed as a Motion to Dismiss. (Dkt. 64; Jan. 4, 2019 Order.) Before briefing was completed on Defendant Santa-Cruz's motion, Plaintiff was granted permission to file an amended complaint. (Jan. 31, 2019 Order; Dkt. 67-1.) City Defendants and Defendant Santa-Cruz then filed additional replies to Plaintiff's Amended Complaint. (Dkts. 70, 72.) Oral Argument on Defendant Santa-Cruz's Motion to Dismiss, at which City Defendants also appeared and argued, was held on March 19, 2019. (Mar. 19, 2019 Minute Entry.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[7] At an initial conference on May 31, 2018, City Defendants once again raised these improper service issues before Judge Bloom. (May 31, 2018 Transcript of Initial Conference ("May 31 Transcript"), Dkt 57-1, 2:22–5:14.)

[8] Though Defendant Santa-Cruz was originally served by the U.S. Marshals Service with the other Defendants on March 30, 2018 (Dkt. 10), City Defendants noted that they had no record of Defendant Santa-Cruz as a City employee and asked Plaintiff to provide more information about her so that they could properly identify her (Dkt. 15.) Plaintiff provided City Defendants with the Transfer Form, which indicated that Santa-Cruz was a state employee. (Dkt. 48-2.) Judge Bloom then ordered, pursuant to *Valentin v Dinkins*, 121 F.3d 72 (2d Cir. 1997), that the New York State Attorney General's Office provide the proper address for serving Santa-Cruz. (Sept. 28, 2018 Order, Dkt. 50.) Santa-Cruz was successfully served on December 6, 2018. (Dkt. 62.)

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, brackets, and citation omitted).

## DISCUSSION

### I. City Defendants' Motion to Dismiss

City Defendants argue that Plaintiff's Amended Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(5) since they were not properly served, as required

6

by Rule 4(e), and under Rule 12(b)(6) because Plaintiff failed to file his claim within the applicable statute of limitations. *See* Fed. R. Civ. P. 4(e); Fed. R. Civ. P. 12(b)(5)–(6).

### A. Service

"Before addressing Defendants' Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). Defendants argue that since Plaintiff has failed to properly effect service, his case must be dismissed. However, under Rule 4, if a plaintiff fails to effect service on a defendant, the Court "must dismiss the action without prejudice against that defendant *or* order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). Furthermore, "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added); *see also Canady v. Correct Care Sols.*, No. 15-CV-4893 (KMK), 2017 WL 4280552, at *9 (S.D.N.Y. Sept. 25, 2017) (noting that when a plaintiff has demonstrated good cause, the extension to serve is mandatory) (citing *Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997)).

Here, Plaintiff is proceeding *pro se* and is thus entitled to rely on the U.S. Marshals Service to effect service. *See Meilleur v. Strong*, 682 F.3d 56, 62 (2d Cir. 2012) (quoting *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir.1986)). In the original complaint, Plaintiff provided addresses for all Defendants, and the U.S. Marshals Service returned executed summonses for all Defendants based on these addresses. (*See* Complaint, Dkt. 1, at ECF 1–2; Dkts. 7–13.) Defendants argue that this service was improper because Defendants Schriro, Berliner, Rivera, and Hills, who are no longer employed by the NYC DOC, were served at their former work addresses, and Defendants Hasan and Habib were served at the Anna M. Cross Center on Rikers Island, when they should have been served at their actual place of employment, the Physician Affiliate Group

7

of New York. (Defendants' Memorandum of Law in Support ("Defs.' Br."), Dkt. 54, at 9; *see also* Dkt. 15 at ECF 1–2 (requesting that Hasan and Habib be served at their work addresses and asking for more time to find the proper addresses for Schriro, Berliner, Rivera, and Hills).) However, "in order to discharge their service obligations, *pro se* incarcerated plaintiffs need not provide the Marshals Service with a current address for the parties to be served." *Sidney v. Wilson*, 228 F.R.D. 517, 523 (S.D.N.Y. 2005). If "a prisoner provides the information necessary to identify the defendant, courts have uniformly held that the Marshal[s'] failure to effect service automatically constitutes good cause within the meaning of Rule 4(m)." *Id.* "[T]he Court has an obligation to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training[,]" *Canady*, 2017 WL 4280552, at *10 (internal quotations and citation omitted), as well as their lack of resources, *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d. Cir 1997) ("From [Plaintiff's] place of incarceration, it is hard to see what investigative tools would be at his disposal to obtain further information on [Defendants'] identit[ies]."). The Court finds, therefore, that Plaintiff has demonstrated good cause for failure to properly serve City Defendants.[9]

In addition to the "special solicitude afforded to *pro se* civil litigants," *Canady*, 2017 WL 4280552, at *10, "[t]he Second Circuit has held that Federal Rule of Civil Procedure 4 is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *McNulty v. Yaneka*, No. 11-CV-08320 (ER), 2013 WL 684448, at *4 (S.D.N.Y. Feb. 25, 2013) (internal quotations and citations omitted). Defense counsel,

---

[9] Such a finding is consistent with Defendants' obligation to provide information, such as addresses, under *Valentin*, 121 F.3d at 75, in which the Second Circuit recognized that a *pro se* prisoner might have difficulty finding all of the information necessary to prosecute his lawsuit on his own.

Daniel May, Esq. and Michele Carmela Greco, Esq., entered notices of appearance on behalf of Defendants Hasan and Habib on April 18, 2018 (Dkt. 14) and April 19, 2018 (Dkt. 16), respectively, and have litigated this case on their behalf through this instant motion. Furthermore, though defense counsel has noted that before they can represent Defendants Berliner and Hills, they must get a "request from them for legal representation," (May 31 Transcript, Dkt. 46, at 2:22–3:3),[10] they have since entered notices of appearance on behalf of Berliner, Schriro, and Hills (Dkts. 32, 33) and have likewise litigated this case on their behalf. The Court therefore infers that all City Defendants have actual notice of the instant litigation. *See Sidney*, 228 F.R.D. at 524 (finding that a defendant that had retained private counsel clearly had received actual notice of the complaint).

In sum, given the Second Circuit's "clearly expressed preference that litigation be resolved on the merits," *Canady*, 2017 WL 4280552, at *10 (internal quotations and citation omitted)—as well as the facts that Plaintiff has shown good cause for his failure to effect proper service and that City Defendants have actual notice of the instant action—the Court denies the City Defendants' motion under Rule 12(b)(5) to dismiss this case for improper service.

**B. Statute of Limitations**

Plaintiff brings his Eighth Amendment deliberate indifference claim under § 1983. (Am. Compl. ¶¶ 3, 9.) Section 1983 claims are subject to a three-year statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citing N.Y. C.P.L.R § 214(5)) (stating that the statute of limitations for personal injury actions under state law, which in New York is three

---

[10] Though City Defendants' counsel did not reference Defendant Schriro during the May 31 conference, given that he is also retired, the Court assumes that the same request for legal representation must be made before City Defendants' counsel can enter a notice of appearance on his behalf.

years, supplies the statute of limitations for § 1983 actions); *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (noting three-year statute of limitations for due process claim under § 1983). Plaintiff's state law claims of deliberate indifference, negligence, and medical malpractice have varying statutes of limitations ranging from one to three years. (Defs.' Br., Dkt. 54, at 5–6); *see also* CPLR §§ 214-a, 214(5), 215.

While the applicable limitations period is determined by state law, the accrual date "is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (internal quotations and citation omitted); *see also S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 189 (E.D.N.Y. 2014) ("This concept of accrual is known as the 'discovery rule.'") (quoting *Pearl*, 296 F.3d at 80). "The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

Plaintiff alleges that he became aware of his injury, the untreated syphilis, in September 2017. (Am. Compl. ¶ 13.) Though he also alleges that NYC DOC conducted tests in June 2013 that revealed that his syphilis infection was still active (*id.* ¶ 11), Plaintiff claims that he was never told of the June 2013 test results by Defendants and that he first discovered this information when reviewing his medical records after his neurosyphilis diagnosis in September 2017 (*see id.*; June 1 Transcript, Dkt. 58, at 7:21–24 ("The dates that I'm quoting is because I asked to review my medical records after I was informed of this. So this is a lot of the dates coming from there.").)

City Defendants argue that Plaintiff's cause of action accrued in June 2013, when tests revealed that Plaintiff's syphilis infection was still active and needed treatment. (Defs.' Br., Dkt.

10

54, at 6–8; Defendants' Reply Brief ("Defs.' Reply Br."), Dkt. 57, at 1–5; Defendants' Response to Amended Complaint, Dkt. 70, ECF 1–3.)[11]  Notably, City Defendants do not make the legal argument that Plaintiff's cause of action accrued as of June 2013 even if he was unaware of the tests that showed that his syphilis infection was still active; rather, they make a factual argument that, despite the written allegations in his Amended Complaint and the oral allegations made before the Court, Plaintiff did in fact know about the June 2013 tests, which means that his § 1983 claim accrued at that point in time.  Specifically, City Defendants contend that

> Mr. Green has set forth various versions of the 'facts' regarding his medical treatment at Rikers Island in 2012–2013, as well as his treatment at subsequent New York State facilities.  These facts differ amongst the Complaint in the instant action, the Complaint in [P]laintiff's Northern District action, the representations Mr. Green made during the conferences with Magistrate Judge Bloom and Judge Chen, and even differ from what Mr. Green claims took place in his Opposition papers.

(Defs.' Reply Br., Dkt. 57, at 1.)  City Defendants go on to excerpt different passages from Plaintiff's written submissions and oral statements that purportedly show these "various versions of the 'facts.'"

This argument is unavailing at the motion to dismiss stage.  To be sure, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Deronette v. City of New York*, No. 05-CV-5275 (SJ), 2007 WL 951925, at *2 (E.D.N.Y. Mar. 27, 2007) (quoting *In Re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001).  However, the Court does not agree with City Defendants that Plaintiff has contradicted himself to such an extent that the Court can or should disregard the clear factual allegations he

---

[11] Defendant Santa-Cruz joins in City Defendants' statute of limitations argument.  (*See* Defendant Santa-Cruz Motion to Dismiss, Dkt. 64, at 2; Reply Br., Dkt. 66, at 2.)

makes regarding when he first knew that his syphilis infection was still active. In fact, all of the instances that City Defendants reference to show that Plaintiff is contradicting himself can also be explained by Plaintiff conflating what he *knew* between December 2012 and September 2017 with what he *discovered* during his post-September 2017 review of medical records. Given that the Court is obliged to draw all inferences in Plaintiff's favor, as well as liberally construe his allegations, the Court finds that Plaintiff has sufficiently alleged that his cause of action did not accrue until September 2017.

Even assuming, *arguendo*, that Plaintiff's injury did accrue in June 2013, the Court finds that equitable tolling would nonetheless allow Plaintiff's claim to overcome the statute of limitations hurdle.[12] Though "[f]ederal courts deciding section 1983 actions generally apply the tolling provisions of the state in which the action is brought," *Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) (citing *Wallace v. Kato*, 549 U.S. 384 (2007)), they can also apply the federal equitable tolling standard "which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." *Id.* (internal quotations

---

[12] The parties also addressed whether Plaintiff could overcome the statute of limitations by pleading that his lack of treatment at the state prison facility was a continuing violation. "[T]he continuing violation doctrine can apply to Eighth Amendment claims of medical indifference brought under 42 U.S.C. § 1983 when the plaintiff shows an ongoing policy of deliberate indifference to his or her serious medical needs and some acts in furtherance of the policy within the relevant statute of limitations period." *Shomo*, 579 F.3d at 179. However, this doctrine is not available to Plaintiff because the acts that were committed within the statute of limitations were not committed by any of the Defendants. *See Crenshaw v. Syed*, No. 9:10-CV-244 (GLS) (GHL), 2011 WL 2975687, at *4 (N.D.N.Y. Mar. 8, 2011) ("[I]t is not enough to simply allege that *someone* committed a wrongful act within the statute of limitations period. Rather, a plaintiff hoping to invoke the continuing violation doctrine must allege that *the defendant* committed a wrongful act within the statute of limitations period."), *report and recommendation adopted*, No. 9:10-CV-244 (GLS) (GHL), 2011 WL 2975775 (N.D.N.Y. July 21, 2011); *Thompson v. Dep't of Corr. NYC*, No. 9:09-CV-1038 (NAM) (GHL), 2011 WL 4369125, at *6 (N.D.N.Y. Sept. 19, 2011) ("All action (or inaction) by the City defendants regarding plaintiff's medical condition ceased upon plaintiff's transfer to State custody.").

and citation omitted). "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action." *Id.* at 453 (internal quotations and citation omitted).

The Court finds that Plaintiff is entitled to equitable tolling under either the state or federal standard. Plaintiff alleges that none of the City Defendants ever informed him of his June 2013 positive syphilis tests. (Am. Compl. ¶ 13; June 1 Transcript at 8:12–14.) This failure to disclose crucial medical information constitutes misrepresentation, as required by the state equitable tolling standard. *See St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 174–75 (E.D.N.Y. 2010) ("It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment, which is itself the equivalent of affirmative misrepresentations of fact.") (internal quotations and citation omitted); *cf. Pabon v. Wright*, 459 F.3d. 241, 249 (2d Cir. 2006) (finding a right to medical information as an extension of a prisoner's right to refuse unwanted treatment). However, even if Plaintiff does not qualify for equitable tolling under the state standard, the Court finds that federal equitable tolling should apply because "as a matter of fairness . . . [P]laintiff has been prevented in [an] extraordinary way from exercising his rights." *Fairley v. Collins*, No. 09-CV-6894 (PGG), 2011 WL 1002422, at *5 (S.D.N.Y. Mar. 15, 2011) (internal quotations omitted); *cf. Saunders v. City of New York*, 594 F. Supp. 2d 346, 359 (S.D.N.Y. 2008) (applying equitable tolling when the defendants failed to disclose statutorily mandated language). If Defendants had timely informed Plaintiff that his syphilis infection was still active in June 2013, Plaintiff could have not only filed his cause of action sooner, but also had the necessary information to ensure he

received adequate treatment. Defendants' failure to disclose this information establishes the extraordinary circumstances that justify equitable tolling.[13]

Therefore, given that Plaintiff's claim either did not accrue until September 2017, or, in the alternative, that Plaintiff is entitled to equitable tolling, Plaintiff's causes of action are not time-barred. Accordingly, the Court denies the City Defendant's motion under Rule 12(b)(6) to dismiss this case as to them.

## II. Defendant Santa-Cruz's Motion to Dismiss

In addition to arguing that Plaintiff's complaint should be dismissed on statute of limitations grounds, which the Court finds unavailing as discussed *supra*, Defendant Santa-Cruz also argues that Plaintiff's federal claim should be dismissed for failure to state a claim and that Plaintiff's state claims are jurisdictionally barred.

### A. Federal Claim

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A deliberate indifference claim contains two

---

[13] In order to qualify for the federal equitable tolling standard, Plaintiff also "must have acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The Court finds that Plaintiff did so. For example, when Plaintiff was transferred to the state system, he was told his syphilis infection just needed monitoring. (Am. Compl. ¶ 14.) When he finally learned that his syphilis was still active, he requested to review his medical records to determine what had happened. (June 1 Transcript at 7:21–24 ("The dates that I'm quoting is because I asked to review my medical records after I was informed of this [diagnosis].").) At the March 19, 2019 Oral Argument, Plaintiff alleged that he was only allowed to look at his records briefly and was not provided copies of those records. Finally, as Plaintiff notes, his ability to independently verify his medical condition was severely constricted by his incarceration. (Am. Compl. ¶ 13 ("The plaintiff exclusively must trust and depend on the medical staff provided by NYC[]DOC, to provide the proper and adequate care and treatment for any and all medical problems.").)

requirements. The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Id.* (internal quotations and citations omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.") (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)). But this "recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Salahuddin*, 467 F.3d at 280.

Defendant Santa-Cruz argues that Plaintiff has not sufficiently alleged that Santa-Cruz acted with the necessary subjective intent. Though Plaintiff alleges that Santa-Cruz failed to ensure that Plaintiff's medical records were accurate and "to notify the necessary parties[] [that] the records [were] missing documentation of any treatment for the diagnosed [syphilis] condition," (Am. Compl. ¶ 12), the Transfer Form indicates that Santa-Cruz, in fact, noted that Plaintiff tested positive for syphilis in December 2012, (Transfer Form, Dkt. 48-2, at ECF 2). Plaintiff also acknowledges that the medical records that NYC DOC provided to state prison medical staff included the June 2013 tests, as he discovered their existence by reviewing his prison medical records after receiving his neurosyphilis diagnosis in September 2017. (June 1 Transcript at 7:21–24 ("The dates that I'm quoting is because I asked to review my medical records after I was informed of this [diagnosis]. So this is a lot of the dates coming from there.").) Had Defendant Santa-Cruz failed to note Plaintiff's syphilis diagnosis when transferring his medical information or failed to provide the June 2013 results to the state prison medical staff,[14] Plaintiff might have

---

[14] It can be plausibly inferred that Santa-Cruz, who was responsible for collecting Plaintiff's NYC DOC medical records and transmitting them to the state prison, was the person

adequately alleged a constitutional violation. *Cf. Thomas v. Tisch*, No. 08-CV-0400 (JFB) (WDW), 2009 WL 701009, at *7 (E.D.N.Y. Mar. 11, 2009) (denying motion to dismiss based on allegations that prison officials failed to forward prisoner's medical records and medication to prisoner's new correctional facility). However, Plaintiff's assertion that Santa-Cruz should have done more to ensure he continued receiving proper treatment before or after he was transferred to state custody is not sufficient to raise an Eighth Amendment claim. *See Tolliver v. Sidorowicz*, No. 16-CV-559 (VB), 2017 WL 835193, at *4 (S.D.N.Y. Mar. 2, 2017) ("It is well established that 'negligence, even if it constitutes medical malpractice, does not, without more,' give rise to a constitutional claim.") (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *see also Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (summary order) (granting motion to dismiss when plaintiff did not allege "that any individual at [the pre-transfer correctional facility] knew that there was a substantial risk that [the new correctional facility] would provide inadequate treatment for [plaintiff's medical condition], and then consciously disregarded that risk by approving the transfer"). Here, Defendant Santa-Cruz affirmatively indicated Plaintiff's original syphilis diagnosis on the relevant transfer form, and the medical records she oversaw contained at least some of the pertinent information regarding Plaintiff's syphilis infection. Therefore, Plaintiff has not adequately alleged that Defendant Santa-Cruz was deliberately indifferent to his medical care.

Accordingly, the Court grants Defendant Santa-Cruz's motion to dismiss Plaintiff's Eighth Amendment claim as to her.

### B. State Law Claims

---

who provided the June 2013 test results that Plaintiff saw in September 2017 to the state prison medical staff.

Plaintiff also alleges several state law claims against Defendant Santa-Cruz, who argues that all these claims are jurisdictionally barred based on New York Corrections Law § 24. This law bars claims against employees of the New York State prison system acting with the scope of their employment. *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) ("[Section] 24(2) requires that state law claims for damages against corrections officers shall be brought . . . as claims against the state. This provision, by its plain terms, precludes the assertion of claims against corrections officers in any court, including the federal courts.") (brackets and internal quotations omitted); *see also Hammock v. Pierce*, No. 15-CV-9052 (NSR), 2018 WL 2108244, at *11 (S.D.N.Y. May 7, 2018) ("Thus, because [p]laintiff does not contend that [d]efendants acted outside of the scope of their employment, any state law claims for monetary damages against [d]efendants in their individual capacities are barred by § 24.").[15] Therefore, the Court grants Defendant Santa-Cruz's motion to dismiss Plaintiff's state law claims as to her.

## CONCLUSION

For the reasons stated above, City Defendants' motion is denied in its entirety. City Defendants will provide the proper addresses for service for all City Defendants by May 6, 2019. The United States Marshals Service is respectfully directed to serve the summons and Amended Complaint upon Defendants. Defendant Santa-Cruz's motion is granted in its entirety. Therefore, Plaintiff's federal law claim against Santa-Cruz is dismissed and Plaintiff's state law claims against

---

[15] However, as counsel for Defendant Santa-Cruz noted at the March 19, 2019 Oral Argument, Plaintiff may bring his state law claims against the State of New York in the Court of Claims. *See* N.Y. Correct. Law § 24 ("Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.").

her are also dismissed, without prejudice, to be brought against the proper party in the proper state court.  Defendant Santa-Cruz is terminated from this action.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
UNITED STATES DISTRICT JUDGE

Dated:  April 22, 2019
      Brooklyn, New York